UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JOHN ASHCRAFT, Plaintiff, | ) | |
| v. | ) | No. 2:23-cv-00298-JPH-MG |
| GEO GROUP, et al., Defendants. | ) | |

**ORDER**

In this civil rights action, Plaintiff John Ashcraft alleges that correctional defendants at New Castle Correctional Facility encouraged gang members to attack him by refusing to place him in a safe housing unit and then refused to provide him access to medical care after the attack. Mr. Ashcraft also alleges that the GEO Group maintained a policy and practice of allowing employees to violate prisoners' constitutional rights. The Court now discusses two of Mr. Ashcraft's pending motions. For the reasons explained below, Mr. Ashcraft's motions, dkts. [43] and [55], are **denied**.

## I. Motion for Assistance Recruiting Counsel

Mr. Ashcraft has filed a motion for assistance recruiting counsel. Dkt. 43. Litigants in federal civil cases do not have a constitutional or statutory right to court-appointed counsel. *Walker v. Price*, 900 F.3d 933, 938 (7th Cir. 2018). Instead, 28 U.S.C. § 1915(e)(1) gives courts the authority to "request" counsel. *Mallard v. United States District Court*, 490 U.S. 296, 300 (1989). As a practical matter, there are not enough lawyers willing and qualified to accept a

pro bono assignment in every pro se case. *See Watts v. Kidman*, 42 F.4th 755, 764 (7th Cir. 2022) (explaining that courts must be careful stewards of the limited resource of volunteer lawyers); *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014) ("Whether to recruit an attorney is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.").

"'When confronted with a request under § 1915(e)(1) for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). These two questions "must guide" the Court's determination whether to attempt to recruit counsel. *Id.* These questions require an individualized assessment of the plaintiff, the claims, and the stage of litigation. *See Pruitt*, 503 F.3d at 655–56.

The first question, whether litigants have made a reasonable attempt to secure private counsel on their own, "is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan*, 987 F.3d at 682. Mr. Ashcraft has not indicated whether he has attempted to contact any attorneys with requests for representation. While he indicates that "several attempts have been made," he has not identified any attorneys or law firms that he has contacted to represent him. Dkt. 43 at 2.

Because of this vague assertion, the Court finds that he has not made a reasonable effort to recruit counsel on his own before seeking the Court's assistance. *Thomas v. Anderson*, 912 F.3d 971, 978 (7th Cir. 2019) (because plaintiff did not show that he tried to obtain counsel on his own or that he was precluded from doing so, the judge's denial of these requests was not an abuse of discretion). Based on this record, Mr. Ashcraft has not satisfied the first step of demonstrating he has made reasonable attempts to obtain counsel. His motion for assistance with recruiting counsel, dkt. [43], must therefore be **denied**.

Although the Court has denied the motion based on the first inquiry, it briefly addresses the second inquiry. "The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims himself." *Eagan*, 987 F.3d at 682 (citing *Pruitt*, 503 F.3d at 655). "The court's competency evaluation should account for 'the plaintiff's literacy, communication skills, educational level, and litigation experience,' and, to the extent that such evidence is before the court, information 'bearing on the plaintiff's intellectual capacity and psychological history.'" *Watts*, 42 F.4th at 760 (quoting *Pruitt*, 503 F.3d at 655). "Specifically, courts should consider 'whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself.'" *Eagan*, 987 F.3d at 682 (quoting *Pruitt*, 503 F.3d at 655). "This assessment of the plaintiff's apparent competence extends beyond the trial stage of proceedings; it must

include 'the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.'" *Id.* (quoting *Pruitt,* 503 F.3d at 655).

Even assuming that Mr. Ashcraft has made a reasonable attempt to secure private counsel on his own, he has not satisfied the second inquiry. Though Mr. Ashcraft's motion states that he is recovering from a knee procedure, he has not explained how that hinders his ability to represent himself in this litigation. Indeed, his filings have been legible and comprehensible. Mr. Ashcraft also says he wants counsel because the case is complex. In this case, Mr. Ashcraft alleges that Defendants encouraged gang members to attack him by refusing to place him in a safe housing unit and then refused to provide him access to medical care. He attributes these failings to an unconstitutional GEO Group practice or policy. The facts supporting Mr. Ashcraft's claims are not particularly complex and are within his personal knowledge. Although pursuing a claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), may be difficult without the assistance of counsel, the Court simply lacks the resources to recruit counsel for every pro se litigant who brings a *Monell* claim. *See, e.g.*, *Stockton v. Milwaukee County*, 44 F.4th 605, 617 (7th Cir. 2022) ("*Monell* liability is rare and difficult to establish."); *Watts*, 42 F.4th at 763 (noting that the Court may consider all "available information and the judge's experience to assess the importance and potential merits of the case and to assign priority accordingly." (cleaned up)). Finally, as Mr. Ashcraft's own motion states, he has made all necessary filings as required by

the Court. *See e.g.*, dkts. 3, 34, 38. At this juncture, the Court concludes that he is capable of litigating the case on his own.

For these reasons, Mr. Ashcraft's motion for assistance recruiting counsel is **denied without prejudice**. Dkt. 43. The Court will remain alert to changes in circumstances that may warrant reconsideration of the motion, such as a settlement conference or trial.

## II. Motion for Expert

Mr. Ashcraft has also filed a motion titled "Motion of Expert Witness at Trial." Dkt. 55. He requests that the Court allow expert witnesses to testify at trial, including Dr. Byrd of Wabash Valley Correctional Facility, and Dr. Maddson, an orthopedic specialist out of Terre Haute, Indiana. Mr. Ashcraft anticipates that their testimony would describe their treatment of his left knee injury.

Federal Rule of Evidence 706 provides that "[o]n a party's motion or on its own, the court may . . . appoint any expert that the parties agree on and any of its own choosing." Fed. R. Evid. 706(a). "[T]he job of a neutral, court-appointed expert is to serve the interests of the court rather than those of any party." *Stevenson v. Windmoeller & Hoelscher Corp.*, 39 F.4th 466, 470 (7th Cir. 2022). While the Court has discretion to appoint an expert to aid its understanding of complex or technical evidence, it "should ensure that the purpose of the expert's opinion is to aid the court, not the party seeking appointment." *Martin v. Redden*, 34 F.4th 564, 569 (7th Cir. 2022).

Mr. Ashcraft's motion for an expert witness, dkt. [55], is **denied without prejudice**. It is clear from Mr. Ashcraft's motion that he wants an expert to assist him with presenting his case, which is not an appropriate basis for appointing an expert under Rule 706. *Id.* Mr. Ashcraft can describe his knee injury without the aid of an expert. If this case proceeds to trial, and if Dr. Byrd and Dr. Maddson were his treating physicians, Mr. Ashcraft may consider calling them as fact witnesses to describe the nature of his injuries and the care that he received.

If the Court determines that a neutral expert is necessary to understand scientific evidence related to Mr. Ashcraft's knee injury, it may exercise its discretion to appoint one under Rule 706. *Stevenson*, 39 F.4th at 471 (noting that a district court may appoint an expert "as one way to address the gap or the imbalance in the record, particularly if there are issues as to which the court believes it would benefit from an independent viewpoint").

## III. Conclusion

For the foregoing reasons, Mr. Ashcraft's motion for counsel, dkt. [43], and his motion for an expert witness, dkt. [55], are **denied**.

**SO ORDERED.**

Date: 10/21/2024

James Patrick Hanlon
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JOHN ASHCRAFT
956487
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

All Electronically Registered Counsel