UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JOHN ASHCRAFT, | ) |
|                 Plaintiff, | ) |
| v. | ) No. 2:23-cv-00298-JPH-MG |
| GEO GROUP, et al., | ) |
|                 Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING MOTION FOR LEAVE TO AMEND, AND DIRECTING FINAL JUDGMENT**

Plaintiff John Ashcraft is an Indiana Department of Correction ("IDOC") inmate who was once housed at the New Castle Correctional Facility ("New Castle"). In this action, he alleges that Defendants violated his constitutional rights while he was incarcerated at New Castle.

Mr. Ashcraft proceeds on Eighth Amendment claims against Defendants Gilbert and Lunsford for encouraging gang members to attack him, refusing to place him in a safe housing unit, and refusing him access to medical care, leading him to suffer severe anxiety, depression, and episodes of self-harm. Dkt. 46 at 4. He also proceeds on policy and practice claims against GEO Group for maintaining a practice of allowing its employees to violate inmates' constitutional rights. *Id.*

Defendants moved for summary judgment. Dkt. 63. Mr. Ashcraft filed a response in opposition to Defendants' summary judgment motion, dkt. 67,

1

along with a designation of evidence, dkt. 68. Defendants filed a reply in support, dkt. 69, and Mr. Ashcraft filed a surreply, dkt. 70.[1]

For the reasons explained below, Defendants' motion for summary judgment, dkt. [63], is **GRANTED**.

## I.
## Motion for Leave to Amend

As an initial matter, Mr. Ashcraft's motion for leave to amend pleadings, dkt. [62], is **DENIED**. Mr. Ashcraft moved for leave to amend pleadings on October 30, 2024, almost four months after the deadline to amend pleadings set by this Court's Order Setting Pretrial Schedule. Dkt. 33. Mr. Ashcraft indicates in his motion that "it is in the interest of justice to have pleadings taken in the right context and not to have defendants and the Court mislead [sic] by the pleadings. . . ." Dkt. 62.

"Federal Rule of Civil Procedure 15 provides that, as a general rule, a court 'should freely give leave [to amend] when justice so requires.'" *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) (quoting Fed. R. Civ. P. 15(a)(2)). But when, as here, a plaintiff moves to amend his complaint after the deadline, the Court applies the "heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) were satisfied." *Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014). "[D]istrict judges have broad discretion to deny leave to amend, where there is undue delay, bad faith, dilatory motive, repeated failure to cure

---

[1] Although Mr. Ashcraft did not move for leave to file a surreply, in light of his pro se status, the Court exercises its discretion and considers his surreply.

2

deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Huon v. Denton,* 841 F.3d 733, 745 (7th Cir. 2016) (internal quotation omitted).

    Here, Mr. Ashcraft had already been allowed to file an amended complaint, dkt. 46. In connection with his motion for leave to file another amended complaint, Mr. Ashcraft provided no reasons in support of the motion, so he has not established good cause. *Adams*, 742 F.3d at 734. Nor did he attach a proposed amended complaint, so the Court could not determine whether permitting an amendment would be in the interest of justice. Accordingly, Mr. Ashcraft's motion to amend, dkt. [62], is **DENIED**.

## II.
## Standard of Review

    A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it

need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

### III.
### Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Ashcraft and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

**A. The parties**

Plaintiff John Ashcraft was incarcerated at New Castle for approximately six months beginning in August 2021. Dkt. 65-1 at 7, 18-19 (Deposition of

John Ashcraft).[2]

Defendant Gilbert was an employee of GEO working as a Sergeant in New Castle's Mental Health Unit.  Dkt. 65-6 at 1.  Sgt. Gilbert is Mr. Ashcraft's brother-in-law.  Dkt. 65-4.  Sgt. Gilbert has never had contact with Mr. Ashcraft outside of New Castle and has no knowledge of his underlying criminal conviction.  Dkt. 65-6 at 3.

Defendant Lunsford was an employee of GEO working as a Captain in the RHU unit at New Castle. Dkt. 65-3 at 1.

### B. Extortion and protection request

Upon arrival to New Castle, Mr. Ashcraft was placed in a two-man cell with a cellmate.  Dkt. 65-1 at 8.  Around September 2021, Mr. Ashcraft was approached by an inmate who was a member of a security threat group ("STG"), and the inmate ordered Mr. Ashcraft to make payments to him.  *Id.* at 9.  Mr. Ashcraft made payments to the inmate for several months.  *Id.* at 9-12.

Mr. Ashcraft referred to this inmate as "some black guy" and otherwise could not identify him.  *Id.*  Despite seeing correctional officers daily, Mr. Ashcraft did not bring up the extortion until it had ended because "it felt it was in [Mr. Ashcraft's] best interest."  *Id.* at 11-12, 14.

In November of 2021, Mr. Ashcraft made a protection request to either nonparty Sgt. Sizemore or Sgt. Gilbert by packing up his things, moving out of

---

[2] The designated evidence includes a condensed version of Mr. Ashcraft's deposition transcript.  *See* dkt. 65-1.  The Court cites the page of the original deposition rather than the page of the condensed, filed copy.

his cell and telling Sgt. Sizemore or Sgt. Gilbert he had to move. *Id.* at 15. He did not specify or know who he sought protection from, the number of people involved, or for how long he sought protection. *Id.* at 38-40.

### C. Bed moves

As a result of Mr. Ashcraft's request, Mr. Ashcraft was moved into a two-man cell in O-3 pod where he was not assigned a cellmate. Dkt. 65-1 at 16-17. From then on, Mr. Ashcraft was provided the opportunity to change cells, but Mr. Ashcraft refused each time. *Id.* at 17. His reason for refusing the other bed moves was "because gang members are everywhere. One gang member don't get you, the other will." *Id.* He also wanted to remain in a cell by himself. *Id.* at 18. Regardless, Mr. Ashcraft remained in his two-man cell, alone, for the duration of his time at New Castle. *Id.*

### D. Injuries, medical treatment, and mental health

Medical staff came to the O-3 unit once or twice a day. *Id.* at 23.

While Mr. Ashcraft was housed alone in his cell, he fell and hurt his knee trying to clean a vent. *Id.* at 19; dkt. 68 at 20. He dislocated his knee and put it back into alignment by himself. Dkt. 68 at 20.

He showed his knee to Sgt. Gilbert, who did nothing. *Id.* He believes that Sgt. Gilbert "is responsible for . . . looking into situations for what it is[]" and thus should have made sure he had access to the doctor. Dkt. 65-1 at 23. Mr. Ashcraft believed that Sgt. Gilbert could see his injury: "if he couldn't tell it, he was blind." *Id.* Mr. Ashcraft said "no one from medical []ever came." Dkt. 68 at 20.

6

Sgt. Gilbert did not specifically recall Mr. Ashcraft requesting medical attention while housed in O-3. Dkt. 65-6 at 2. However, Sgt. Gilbert affirmed that medical personnel were on the unit daily, and medical staff were available to hand out health care request forms as well as administer care. *Id.*

On the day Mr. Ashcraft dislocated his knee, he asked a nurse for help during the evening medical check. Dkt. 68 at 20. The nurse told him to fill out a health care slip. *Id.*; dkt. 65-1 at 19. Mr. Ashcraft testified that he put in several medical requests and grievances, but no one ever responded. Dkt. 68 at 20.

Mr. Ashcraft filed a grievance in May of 2022, which was responded to, and health care request forms in June and May of 2022 regarding his knee and medication, but these documents contained no information about mental health, depression, or self-harm. Dkt. 68 at 43, 45-46. Mr. Ashcraft testified that his dislocated his knee caused him "pain and suffering" and "a little mental health damage from what it's done to me." Dkt. 65-1 at 30.

Mr. Ashcraft was not subjected to any physical harm by any other inmates while incarcerated at New Castle. *Id.* at 26.

## IV.
## Discussion

### A. Failure to protect

Mr. Ashcraft proceeds on Eighth Amendment failure-to-protect claims against Defendants Gilbert and Lunsford. Dkt. 46 at 4. Mr. Ashcraft alleges

that Defendants encouraged gang members to attack Mr. Ashcraft and refused to place him in a safe housing unit. Dkt. 47 at 1-2, 6-7.[3]

Defendants argue that they are entitled to summary judgment because Mr. Ashcraft's failure to protect claims lack evidentiary support. Dkt. 64 at 7. Also, the designated evidence shows that there was no clear threat against Mr. Ashcraft and that he could provide no details about the inmate who extorted him. *Id.* Finally, Defendants argue that Mr. Ashcraft remained alone in a two-man cell for the duration of his time at New Castle and that he was not harmed by any inmate. *Id.*

Prison officials have a duty to protect inmates from violent assaults by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Prison officials breach that duty when they were "aware of a substantial risk of serious injury to [an inmate] but nevertheless failed to take appropriate steps to protect him from a known danger." *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) (quoting *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002)); *see also Santiago v. Walls*, 599 F.3d 749, 758–59 (7th Cir. 2010). To succeed on a claim for failure to protect, Mr. Ashcraft must show that (1) Defendants were aware of a substantial risk of serious injury to him, and (2) they acted with deliberate indifference to that risk. *See Farmer*, 511 U.S. at 834, 837; *Dale v. Poston*, 548

---

[3] Mr. Ashcraft believes that, around May 5, 2022, he saw Captain Lunsford say something to other correctional officers that Mr. Ashcraft was "snitching on everybody." Dkt. 68 at 19. But this incident occurred five months after the events that gave rise to the complaint, and taken as true, shows only that Captain Lunsford made these statements to other correctional staff. It therefore is not evidence of Captain Lunsford "encourag[ing] gang members to attack Mr. Ashcraft."

F.3d 563, 569 (7th Cir. 2008). An official will only be liable when he disregards that risk by failing to take reasonable measures to abate it. *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006). Additionally, damages are unavailable for fear of an unrealized attack. *Babcock v. White*, 102 F.3d 267, 270 (7th Cir. 1996). A failure to protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005).

    Here, Defendants Gilbert and Lunsford are entitled to summary judgment on the failure to protect claims against them. The designated evidence shows that Mr. Ashcraft never told any correctional staff about the extortion scheme until after it ended. Dkt. 65-1 at 11-14. "In failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Gidarisingh v. Pollard*, 571 F. App'x 467, 470 (7th Cir. 2014) (quoting *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996)); *LaBrec v. Walker*, 948 F.3d 836, 841 (7th Cir. 2020) ("[T]he prison official must have actual, not merely constructive, knowledge of the risk to be liable.").

    And although Mr. Ashcraft alleged in his amended complaint that gang members were attacking him, there is no designated evidence that he was ever attacked, hit, or otherwise harmed by any inmate during the relevant timeframe. Without having suffered an actual injury, Mr. Ashcraft cannot make "a compensable claim under the Eighth Amendment." *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996) (noting that it is the "assault itself, rather

9

than any fear of assault" that supports a failure-to-protect claim, and "failure to prevent exposure to risk of harm . . . does not entitle [the plaintiff] to monetary compensation"); *see Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) ("[Plaintiff's] claim fails on the basic proposition that he has sued for damages under § 1983 and alleged a constitutional tort (an Eighth Amendment violation) without then developing evidence of a recoverable injury.").

Further, the evidence reveals that prison staff took reasonable steps to protect Mr. Ashcraft from other inmates. After Mr. Ashcraft made vague allegations that he was in danger, he was placed in a cell by himself, where he remained for the rest of his stay at New Castle.

Accordingly, Defendants Gilbert and Lunsford are entitled to summary judgment on the failure-to-protect claims against them.

### B. Deliberate indifference to medical need

Mr. Ashcraft proceeds on Eighth Amendment deliberate-indifference-to-medical-need claims against Defendants Gilbert and Lunsford based on his allegations about his knee injury, depression, and acts of self-harm. Dkt. 46 at 3-4.

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively

10

serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

Mr. Ashcraft contends that Defendants Gilbert and Lunsford refused him access to medical care for his knee, leading him to suffer severe depression and episodes of self-harm. Dkt. 46 at 4.

Defendants argue that his claims are unsupported by the record, and in any event, neither Defendant had a duty to provide healthcare or medical services to inmates at New Castle, including Mr. Ashcraft. Dkt. 64 at 9. Specifically, they argue that Mr. Ashcraft cannot demonstrate that they knew of and consciously disregarded a risk to his health or safety because it is undisputed that medical staff was available to him twice a day while he was housed in O-3. Dkt. 65-1 at 23.

As an initial matter, Mr. Ashcraft designates no evidence from which a reasonable jury could find that he experienced "severe depression and episodes of self-harm." The only designated evidence related to Mr. Ashcraft's mental health is his deposition testimony that his dislocated knee caused him "pain and suffering" and "a little mental health damage from what it's done to me." Dkt. 65-1 at 30. Further, the emergency grievance he filed in May 2022 and the health care request forms he submitted in May and June 2022 contain

11

complaints regarding his knee and medications, but make no reference to mental health, depression, or self-harm of any kind. Dkt. 68 at 43, 45-46. Thus, Defendants are entitled to summary judgment on this claim with respect to Mr. Ashcraft's mental health needs.

Next, Mr. Ashcraft designates no evidence that he asked Defendant Lunsford for medical care or that Defendant Lunsford otherwise knew that Mr. Ashcraft needed medical care. "'To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.'" *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Because liability under § 1983 requires Mr. Ashcraft to make a showing of personal involvement, Defendant Lunsford is entitled to summary judgment on any deliberate indifference to medical need claim against him. *Whitfield*, 76 F.4th at 706.

Sgt. Gilbert is likewise entitled to summary judgment on the deliberate indifference claim against him regarding Mr. Ashcraft's dislocated knee. The Court assumes for purposes of the summary judgment motion that Mr. Ashcraft's dislocated knee was objectively serious. To avoid summary judgment, then, the record must allow a reasonable jury to conclude that Sgt. Gilbert acted with deliberate indifference—that is, that he "consciously disregarded a serious risk to [Mr. Ashcraft's] health." *Dean*, 18 F.4th at 241. Deliberate indifference requires more than negligence or even objective recklessness. *Id*. Rather, Mr. Ashcraft "must provide evidence that an official

actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

    Here, Mr. Ashcraft showed his knee to Sgt. Gilbert and told Sgt. Gilbert that Mr. Ashcraft had popped it back into the socket himself. Dkt. 68 at 20. Mr. Ashcraft believes that Sgt. Gilbert should have ensured that he saw a medical provider "because he is responsible for . . . looking into situations for what it is." Dkt. 65-1 at 19. Mr. Ashcraft also testified that Sgt. Gilbert "talked to [him] bad" and that Mr. Ashcraft "couldn't get what [he] needed, couldn't get healthcare slips, couldn't get request slips or nothing." *Id.* at 29. But Mr. Ashcraft's own testimony reveals that the evening he dislocated his knee, Mr. Ashcraft asked a nurse for help, who told him to fill out a health care slip. Dkt. 68 at 20; 23-24; dkt. 65-1 at 19. The medical department did not assess the situation as a medical emergency and told Mr. Ashcraft to file a health care request. *Id.* Mr. Ashcraft's designated evidence also reveals that he filed health care requests in May and June of 2022, contradicting his assertion that Sgt. Gilbert prevented him from obtaining these forms. Dkt. 68 at 45, 46.

    Mr. Ashcraft designates no evidence that he told Sgt. Gilbert the situation with his knee was an emergency or required immediate medical attention. Moreover, Mr. Ashcraft's designated evidence shows that he communicated that same day with medical personnel, who did not consider the situation with his knee to be an emergency and told him to put in a medical request. Dkt. 68 at 20; dkt. 65-1 at 19. Last, there is no designated evidence

13

that Mr. Ashcraft informed Sgt. Gilbert his health care request forms were going unanswered.

The "division of labor within a prison necessitates that non-medical officials may reasonably defer to the judgment of medical professionals regarding inmate treatment." *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019). "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands . . . absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Id.* (internal quotations omitted). Here, medical personnel came by Mr. Ashcraft's cell at least once and sometimes twice a day. Dkt. 65-1 at 23. In the absence of a medical emergency, Sgt. Gilbert was entitled to rely medical personnel to address Mr. Ashcraft's concern about his knee. *See Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021) (citing *Miranda v. Cnty. of Lake*, 900 F.3d 335, 343 (7th Cir. 2018)).

### C. Policy and practice claim

Mr. Ashcraft proceeds on a *Monell* claim against GEO for maintaining a practice of allowing its employees to violate inmates' constitutional rights. Dkt. 46 at 4. To prevail on that claim, Mr. Ashcraft must designate evidence that his constitutional rights were violated by a policy or custom of GEO. *Monell v. Dep't. of Social Services*, 436 U.S. 658, 694–95 (1978). "The critical question under *Monell* is whether a policy or custom of a municipal

14

entity caused a constitutional deprivation."  *Gonzalez v. McHenry Co., Ill.*, 40 F.4th 824, 829 (7th Cir. 2022).

For *Monell* liability to attach, Mr. Ashcraft must first show that he was deprived of a federal right, and then that the deprivation was caused by a GEO custom or policy or failure to implement a needed policy.  *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021).  Further, to the extent Mr. Ashcraft is challenging a facially lawful policy (express or implied), he must provide evidence of a "pattern of similar constitutional violations resulting from the policy."  *Helbachs Café LLC v. City of Madison*, 46 F.4th 525, 530 (7th Cir. 2022) (cleaned up).  If challenging an unconstitutional municipal practice or custom, the plaintiff must show "evidence that the identified practice or custom caused multiple injuries."  *Id.* (cleaned up).

Mr. Ashcraft fails on the first prong as he has not designated evidence showing that he was deprived of a federal right.  Accordingly, summary judgment must be granted for GEO.

## V.
## Conclusion

Mr. Ashcraft's motion to amend, dkt. [62], is **DENIED as untimely.**  Mr. Ashcraft's motion for case status, dkt. [72], and his motion for judgment, dkt. [74], are **GRANTED** to the extent that the Court now issues its order on

summary judgment, which resolves all of the claims previously pending in this matter.

Defendants' motion for summary judgment, dkt. [63], is **GRANTED.** Defendants Gilbert, Lunsford, and GEO are entitled to summary judgment on all claims against them. Final judgment shall issue by separate entry.

**SO ORDERED.**

Date: 9/23/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JOHN ASHCRAFT
956487
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

All electronically registered counsel